# Exhibit 1



eCaseView  *Hello Guest!*  Log-out                              New Search    Help ▼    Home

**CASE NUMBER:** 50-2026-CA-003150-XXXA-MB
**CASE STYLE:** FRESH POND INVESTMENT LLC V SKATTEFORVALTNINGEN
**ACCESS LEVEL:** D

Search Criteria    Search Results    Case Info    Party Names    **Dockets & Documents**    Case Fees    Court Events

View documents and order certified copies *. See our eCaseView FAQ for step-by-step guidance and information about what documents are available online.

## Document Icons

    Document available. Click icon to view.

    Add a certified copy of the document to your shopping cart.

    Document is Viewable on Request (VOR). Click to request.

    VOR document is being reviewed. Click to be notified when available.

9 docket(s) returned. Click a column header to sort.

Reset file handling preference

Public    VOR    In Process

‹  1  ›                                            25    entries per page

| | DIN | Effective Date | Description | Notes |
|---|---|---|---|---|
| | 1 | 3/19/2026 | DIVISION ASSIGNMENT | AH: Circuit Civil Central - AH (Civil) |
| 📄🛒 | 2 | 3/19/2026 | CIVIL COVER SHEET | |
| 📄🛒 | 3 | 3/19/2026 | COMPLAINT | FOR DAMAGES AND DECLARATORY JUDGMENT F/BPLT |
| 📄🛒 | 4 | 3/19/2026 | ~~CORRECT AND RESUBMIT SUMMONS NOT ISSUED MISSING ADA NOTICE IN ALL THREE REQUIRED LANGUAGES HTTPS://WWW.15THCIRCUIT.COM/PROGRAM-PAGE/ADA | Quentin.Welborn@foley.com;natali.garcia@foley.com;quentin-welborn-4402@ecf.pacerpro.com MISSING ADA NOTICE IN ALL THREE REQUIRED LANGUAGES HTTPS://WWW.15THCIRCUIT.COM/PROGRAM-PAGE/ADA |
| 📄🛒 | 5 | 3/19/2026 | PAID $411.00 ON RECEIPT 6199911 | $411.00 6199911 Fully Paid |
| 📄🛒 | 7 | 3/19/2026 | SUMMONS ISSUED | Quentin.Welborn@foley.com;natali.garcia@foley.com;quentin-welborn-4402@ecf.pacerpro.com AS TO DFT SKATTEFORVALTNINGEN |
| 📄🛒 | 6 | 3/20/2026 | DCM DESIGNATION TO THE STREAMLINE TRACK WITH NON-JURY TRIAL ORDER | REID P. SCOTT 03/20/2026 |

| DIN | Effective Date | Description | Notes |
|---|---|---|---|

Case 9:26-cv-80511-EA   Document 1-1   Entered on FLSD Docket 05/01/2026   Page 3 of 71

| DIN | Effective Date | Description | Notes |
|---|---|---|---|
| 8 | 4/1/2026 | NOTICE OF FILING | NOTICE OF FILING ACCEPTANCE OF SERVICE OF PROCESS |
| 9 | 4/1/2026 | ACCEPTANCE | ACCEPTANCE OF SERVICE OF PROCESS |
| DIN | Effective Date | Description | Notes |

‹ 1 ›

Showing 1 to 9 of 9 entries

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

**I.      CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>FIFTEENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>PALM BEACH</u>   COUNTY, FLORIDA

<u>Fresh Pond Investment LLC, Winston Real Estate Holdings LLC, Bailey Investments LLC, LBM DME Holdings LLC, Louse Investment LLC, Louse Property Holdings LLC, Louse Holdings LLC, Trustees of the LBM Family Trust</u>

Plaintiff

Case # _____

Judge   _____

vs.

<u>Skatteforvaltningen</u>
 Defendant

**II.      AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☐ over $100,000.00

**III.      TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

NOT A CERTIFIED COPY

- 2 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☒ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

- 2 -

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☐ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [  ]
(Specify)

   13

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☐ yes
    ☒ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Quentin R. Welborn        Fla. Bar # 1032613
        Attorney or party                (Bar # if attorney)

Quentin R. Welborn          03/19/2026
  (type or print name)             Date

NOT A CERTIFIED COPY

## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

KIM HENEGHAN, MARK TALUCCI AND
STEVE FELDMAN, AS TRUSTEES OF
THE LBM FAMILY TRUST DATED
FEBRUARY 9, 2021, FRESH POND
INVESTMENT LLC, WINSTON REAL
ESTATE HOLDINGS LLC, BAILEY
INVESTMENTS LLC, LBM DME
HOLDINGS LLC, LOUSE INVESTMENT
LLC, LOUSE PROPERTY HOLDINGS LLC,
AND LOUSE HOLDINGS LLC,

       Plaintiff,

vs.

SKATTEFORVALTNINGEN,

       Defendant.

_____/

**Case No.**

**Division:**

NOT A CERTIFIED COPY

## COMPLAINT FOR DAMAGES AND DECLARATORY JUDGMENT

Plaintiffs, Kim Heneghan, Mark Talucci and Steve Feldman, as Trustees of the LBM Family Trust dated February 9, 2021 (the "LBM Trust"), Fresh Pond Investment LLC ("Fresh Pond"), Winston Real Estate Holdings LLC ("Winston"), Bailey Investments LLC ("Bailey"), LBM DME Holdings LLC ("LBM DME"), Louse Investment LLC ("Louse Investment"), Louse Property Holdings LLC ("Louse PH") and Louse Holdings LLC ("Louse Holdings," together with Louse Investment and Louse PH, collectively, the "Louse Entities," the Louse Entities together with the LBM Trust, Fresh Pond, Winston, Bailey, and LBM DME, collectively, the "Plaintiffs"), by and through the undersigned counsel, bring this Complaint against Defendant Skatteforvaltningen ("SKAT") for declaratory judgment, and allege:

4900-2052-9558.5

## NATURE OF THE ACTION[1]

1.      This action arises from SKAT's unlawful, extra-territorial collection efforts through threatened fraudulent transfer actions and attempts to restrain Fresh Pond's bank accounts in pursuit of a judgment it obtained against Luke McGee ("L. McGee"), Matthew Stein and Jerome Lhote (collectively, the "NY Co-Defendants") in *Stein et al v. Skatteforvaltningen*, No. 1:23-cv-0208-NRB (S.D.N.Y.) (the "New York Litigation").

2.      Plaintiffs are not parties to the underlying New York Litigation.

3.      Plaintiffs are not debtors to the judgment obtained in the New York Litigation (the "New York Judgment").  *See* New York Litigation, ECF 221.

4.      SKAT domesticated the New York Judgment in the Southern District of Florida on February 5, 2026, Case No. 1:26mc20753.

5.      Prior to domesticating the New York Judgment, SKAT served information subpoenas ("Information Subpoenas") and restraining notices (the "Restraining Notices") on Citizens Bank, N.A. ("Citizens") and JP Morgan Chase Bank, N.A. ("Chase") [2], which resulted in Fresh Pond's Florida based bank accounts (the "Fresh Pond Accounts") being restrained at Citizens. SKAT's purported authority for serving the Restraining Notices was New York Civil Practice Law and Rules.  *See* CPLR § 5222(b).

6.      The Fresh Pond Accounts were opened and maintained in Palm Beach, Florida and are considered Florida accounts. The funds in the Fresh Pond Accounts are used exclusively for Fresh Pond's operations and are not the property of any of the NY Co-Defendants. Accordingly,

---

[1] All facts contained herein are based upon information and belief.

[2] At the time of the restraining notice and information subpoena served on Chase, Chase had already closed Plaintiffs' bank accounts.  Upon information and belief, those accounts were closed due to the enforcement actions taken by SKAT.

NOT A CERTIFIED COPY

no restraining notices purporting to rely on New York law should have been used to restrain Fresh Pond's Florida based bank accounts.

7.      On February 23, 2026, SKAT escalated its improper collection attempts by threatening to file fraudulent transfer claims against the LBM Trust and Fresh Pond, among other non-debtor entities who either reside in Florida, maintain accounts or assets in Florida, and/or whose beneficiaries reside in Florida.[3]

8.      Not only are SKAT's threatened fraudulent transfer claims meritless, but they are barred because they were either released pursuant to the Settlement Agreement (as defined herein) or because the applicable statute of limitations has expired.

9.      Accordingly, Plaintiffs seek a declaratory judgment that (i) any collection activities by SKAT against Plaintiffs related to Florida assets must occur in Florida and must comply with Florida law, (ii) Plaintiffs were not recipients of any fraudulent transfers from L. McGee, (iii) Plaintiffs' accounts were not funded with funds from L. McGee so their assets are not subject to attachment by SKAT, the judgment creditor, (iv) SKAT's actions relating to any transfer from L. McGee to Plaintiffs prior to the Settlement Agreement (as defined herein) are barred by the Settlement Release (as defined herein), (v) to the extent the Court determines that Plaintiffs received any fraudulent transfers from L. McGee, those claims against Plaintiffs are barred by the statute of limitations, (vi) Plaintiffs are not alter egos of L. McGee and (vii) there is no basis to pierce the corporate veil of the Plaintiffs.

---

[3] SKAT has previously filed similarly frivolous lawsuits against other third-party non-debtor entities.  For example, on February 25, 2026, SKAT filed an action against Medrock Capital LLC in the District of New Jersey for a repayment of loan that it made to L. McGee. *See Skatteforvaltningen v. Medrock Capital LLC*, D.N.J. Case No. 1:26-cv-02015.

## PARTIES, JURISDICTION, AND VENUE

10. The LBM Trust is a Delaware irrevocable trust. Gabrielle McGee ("G. McGee") is the sole beneficiary of the trust and an investment trustee and has resided in Palm Beach, Florida since 2021. The LBM Trust has assets located in the state of Florida.

11. Fresh Pond is a Delaware limited liability company. Fresh Pond's sole member is the LBM Trust. Fresh Pond maintains bank accounts in Florida.

12. Winston is a Florida limited liability company that owns real property located in Boynton Beach, Florida. Its sole member is Fresh Pond.

13. Bailey is a Delaware limited liability company. Its sole member is the LBM Trust.

14. Louse Investment is a Delaware limited liability company. Its sole member is the LBM Trust.

15. Louse Holdings is a Delaware limited liability company. Its sole member is Louse Investment.

16. Louse PH is a Delaware limited liability company. Its sole member is Louse Investment.

17. LBM DME is a Delaware limited liability company. Its sole member is the LBM Trust.

18. SKAT is the Danish national taxing authority charged with the assessment and collection of taxes on behalf of the Kingdom of Denmark.

19. This is an action for declaratory relief brought pursuant to Chapter 86 of the Florida Statutes to determine the parties' respective rights and obligations arising from SKAT's restraint and attempted control of financial accounts located in the State of Florida and targeted threats

against certain of the Plaintiffs that are located in Florida or otherwise have assets located in Florida.

20.     This Court has subject matter jurisdiction over this action pursuant to (i) § 86.011, Florida Statutes, which authorizes Florida courts to declare rights, status and other equitable or legal relations, (ii) Article V of the Florida Constitution and (iii) § 26.012, Florida Statutes, because this is a civil action for damages and declaratory relief and the amount in controversy exceeds $50,000, exclusive of interest, costs, and attorneys' fees.

21.     This Court has personal jurisdiction over SKAT pursuant to § 48.193, Florida Statutes, because SKAT has committed acts directed toward the State of Florida from which Plaintiffs' claims arise invoking the benefits and protections of the State of Florida's laws, and SKAT could reasonably anticipate being required to defend claims arising from that conduct in Florida courts.

22.     Specifically, SKAT has caused injury to Fresh Pond by knowingly and intentionally directing conduct toward Florida by restraining, attempting to restrain, or otherwise asserting control over financial accounts maintained at financial institutions located in Florida and belonging to Fresh Pond. SKAT, through an improper New York Information Subpoena and Restraining Notice, restrained Fresh Pond's access to its Florida bank account for over three months and ultimately agreed to release the New York restraint.  In doing so, it has registered the judgment against L. McGee in Florida, and has asserted that it will again attempt to restrain Fresh Pond's bank accounts in Florida and pursue other collection activities against Plaintiffs in Florida.

23.     SKAT's conduct was purposefully directed at property and banking relationships located within the State of Florida and invoked the benefits and protections of Florida law.

24. Fresh Pond's claims arise directly out of and relate to SKAT's Florida-directed conduct, including SKAT's restraint and attempted control of Fresh Pond's Florida bank account.

25. SKAT's actions caused injury within the State of Florida and interfered with Fresh Pond's financial and business relationships located in Florida.

26. The claims asserted by each Plaintiff arise out of the same set of operative facts, including SKAT's coordinated efforts to restrain and exercise control over the Plaintiffs' assets to satisfy the judgment against L. McGee.

27. Venue is proper here pursuant to § 47.011, Florida Statutes, because a substantial part of the events giving rise to this action occurred in this county, including SKAT's restraint and attempted control of Fresh Pond's financial accounts and threatened actions against Plaintiffs who have assets located in Palm Beach County, Florida.

## **RELEVANT FACTS**

### I. **L. McGee's History with Danish Authorities**

#### A. **Cum-Ex Trading**

28. In 2010, L. McGee left his employ at Deutsche Bank to work for a family office that invests funds on behalf of a wealthy family (the "Family Office").

29. At that time, entities affiliated with the Family Office were already engaged in dividend arbitrage or "cum ex" trading (the "Cum Ex Trading"). Sometime in late 2013 or early 2014, L. McGee began working with the Family Office in connection with the Cum Ex Trading. Cum Ex Trading was a strategy that was popular across the European Union and particularly in Germany. L. McGee and the Family Office were advised by several lawyers, including some of whom also invested their own funds in the Cum Ex Trading transactions, that Cum Ex Trading was not illegal. L. McGee was not some mastermind behind the Cum Ex Trading. Quite the

contrary, he simply did as he was told and directed by the entities affiliated with the Family Office, its attorneys, and accountants. Nor was Cum Ex Trading novel. Indeed, all of the major Wall Street banks were at some point engaged in this type of trading before exiting the space.

30.     Trading continued into 2015, when Denmark stopped processing requests to reclaim taxes after it publicly alleged it had been defrauded.  At that time, L. McGee was only generally aware that Denmark was investigating the matter further (the "Investigation"). At that time, while the Danish government asked the Family Office questions, it took no affirmative steps to raise claims or otherwise seek compensation from the Family Office, L. McGee, or others at the Family Office.

31.     After news broke that Denmark considered itself to be the victim of tax fraud and start investigating, L. McGee ceased any further involvement with Cum Ex Trading and L. McGee focused his working time and efforts on QMES LLC ("QMES").

32.     During the summer of 2020, L. McGee learned that the Danish government had opened a criminal investigation into his involvement with the Cum Ex Trading.  In January 2021, L. McGee voluntarily sat for an interview with the Danish authorities at the Danish embassy in regard to the Investigation.

33.     In March of 2021, L. McGee sent a tracing of funds he had received from the Cum Ex Trading and a check to the Danish authorities refunding all of the proceeds. Accordingly, L. McGee has not personally profited from Cum Ex Trading.

34.     On April 12, 2021, L. McGee received an email advising him that he was going to be charged in Denmark for criminal offenses related to the Cum Ex Trading.

NOT A CERTIFIED COPY

35.     Due to the criminal indictment, in June of 2021, L. McGee was forced to resign from his position as CEO of AdaptHealth Corp. (a public company) ("Adapt") and forfeit millions of dollars in compensation from Adapt.

36.     L. McGee is set to go to trial in Denmark on criminal charges in June 2026 – five years after being indicted and eleven years after ceasing any further Cum Ex Trading.

**B.      The Settlement Agreement**

37.     In 2017, SKAT engaged in settlement discussions with the NY Co-Defendants, among several other potential defendants, sending an initial draft of a settlement agreement to resolve SKAT's civil claims.  The initial draft proposed a settlement payment of 1.1 billion Danish Kroner ("DKK") and did not include any concept of joint and several liability. And, at this point, L. McGee had not been indicted. From there, the parties entered a series of negotiations and settlement discussions, with drafts of a potential settlement agreement circulated.

38.     In December 2018, SKAT changed its previous position on the proposed settlement and increased the proposed settlement to 2.15 billion DKK (and acknowledged this change due to political pressure) and suggested it would start filing lawsuits in 30 days.

39.     Drafts of the settlement agreement from 2017 and 2018 provided for a release of criminal liability against the NY Co-Defendants and a requirement that the NY Co-Defendants provide full financial disclosures to SKAT in connection with the settlement (the "Excluded Provisions").

40.     On May 28, 2019, SKAT entered into a voluntary settlement agreement solely with the NY Co-Defendants (the "Settlement Agreement") to resolve SKAT's civil claims relating to the Cum Ex Trading whereby the NY Co-Defendants agreed to be jointly and severally liable for $225 million but did not include the Excluded Provisions.  *See* New York Litigation, ECF 47. The

Settlement Agreement contained a Confession of Judgment dated June 10, 2021 attached as an exhibit, which was executed and notarized by the Co-Defendants (the "2021 Confession of Judgment") and was enforceable upon recording of the judgment without further action upon a failure to pay by the Co-Defendants under the Settlement Agreement. The Settlement Agreement did not contain a financial disclosure requirement, but instead contained a list of assets meant to be used to satisfy the judgment. The listed assets were understood by SKAT and the Co-Defendants to be sufficient to cover the Settlement Agreement payment obligations.

41.     Plaintiffs were not parties to the Settlement Agreement and had no involvement in the Cum Ex Trading.  Nor did they receive any of the proceeds from the Cum Ex Trading, either directly or indirectly. Nor were they listed as target assets to satisfy payments owed under the Settlement Agreement payments.

42.     The Settlement Agreement provides for a broad release of certain named individuals, entities, and trusts upon the initial cash payment being made (the "Settlement Release").  The Settlement Release specifically names L. McGee's wife (G. McGee), as a released party, and further releases any and all affiliated entities and trusts of L. McGee, G. McGee, and the other released parties.  The Settlement Release states that the sole recourse following the initial payment is against the NY Co-Defendants.

43.     The initial cash payment due under the Settlement Agreement was made on August 8, 2019.

44.     As a result of the initial cash payment, Plaintiffs are all released parties under the Settlement Release.

45.     A second payment was due under the Settlement Agreement by May 28, 2023. Because of events that transpired outside of L. McGee's control, or that of the Plaintiffs, the assets

9

pledged in the Settlement Agreement did not cover the remainder of the unpaid portion of Settlement Agreement.

46.     In addition to funds paid as part of the initial cash payment, L. McGee has contributed millions of dollars to SKAT to partially satisfy the second payment.  The other NY Co-Defendants have not contributed in any meaningful way to make that second payment.

C.      **The New York Litigation and Judgment**

47.     On March 24, 2023, Matthew Stein and Jerome Lhote, but not L. McGee, initiated the New York Litigation against SKAT in the United States District Court for the Southern District of New York (the "NY Court") asserting that SKAT breached the Settlement Agreement due to its failure to notify the Danish criminal authorities of the Settlement Agreement and that SKAT's sole contractual remedy was the entry of the 2021 Confession of Judgment, which they asserted was unenforceable.  There was no stay in place preventing SKAT from proceeding on its collection efforts under the 2021 Confession of Judgment and SKAT did not seek authority from the NY Court to do so.

48.     Instead, SKAT asserted counterclaims in the New York Litigation against certain parties to the Settlement Agreement, including L. McGee, alleging that they had failed to pay SKAT the second payment due under the Settlement Agreement.  SKAT did not assert any claims against Plaintiffs. Nor was the Settlement Release an issue raised, litigated, or adjudicated in that action. Upon information and belief, SKAT did not take any steps to secure its judgment apart from pursuing its counterclaims.

49.     Following a bench trial held between April 29, 2025 and May 1, 2025, the Southern District of New York issued an Order and Opinion on September 22, 2025 finding in favor of SKAT against the NY Co-Defendants (New York Litigation, ECF 215). On October 9, 2025, that

court entered the New York Judgment in favor of SKAT and against the NY Co-Defendants, jointly and severally, in the amount of $163,984,894.05 (New York Litigation, ECF 221).

50.     Plaintiffs are not named in the New York Judgment and are not judgment debtors in the New York Litigation.

## II.     McGee Family History and Estate Planning

### A.     QMES

51.     Between 2010 and 2011, L. McGee recommended to the Family Office that it start a company to sell medical supply inventory directly to customers and that Family Office go out and buy other companies in the durable medical equipment ("DME") space.

52.     In 2012, in furtherance of L. McGee's recommendations, the Family Office started QMES.  The Family Office capitalized QMES.  L. McGee initially had no ownership interest in QMES.  Between 2012 and 2013, QMES entered into a series of transactions in which it acquired small businesses in the DME space and rolled them into QMES.

53.     In 2013, L. McGee became one of five board members of QMES.  However, L. McGee still served solely as a consultant to QMES and was not an employee or equityholder at that time.

54.      In February 2014, QMES grew substantially through its acquisition of the assets of Landauer Metropolitan that it purchased out of bankruptcy.  At that time, QMES had annual revenues of approximately $200 million.  At that point, L. McGee was approached by two board members about becoming the CEO of QMES with the understanding that L. McGee would continue to work on other projects, and he accepted the CEO position.

55.     In December 2014, QMES made a recourse loan to L. McGee of approximately $1 million which enabled him to purchase 5% of the stock of QMES.

11

56.     L. McGee received other issuances of stock and options from his involvement with QMES, which later was renamed Adapt. QMES was not involved in Cum Ex Trading, nor was any income derived from Cum Ex Trading.

**B.     The LBM Trust**

57.     L. McGee and G. McGee were married in October 2013.

58.     As they were starting a family, on July 28, 2016, L. McGee, as grantor, established an irrevocable trust, the LBM Trust, with G. McGee, the common descendants of L. McGee and G. McGee and L. McGee's sister and her descendants as beneficiaries. L. McGee is not, and never has been, a beneficiary of the LBM Trust.  Jerome Lhote was initially appointed as the independent trustee of the LBM Trust.

59.     LBM Trust was initially funded in 2016, almost three years before the execution of the Settlement Agreement, when L. McGee made a gift to the LBM Trust of $10,000 from L. McGee's compensation as an employee of QMES (the "$10K Gift").

60.     On July 13, 2017, L. McGee further funded the LBM Trust with a gift of $925,000 and subsequently filed a gift tax return reflecting the gift (the "$925K Gift"). As explained below, the $925,000.00 came from a commission earned by L. McGee for negotiating a deal on behalf of PPS.

61.     At the time of the $10K Gift and $925K Gift (collectively, the "Trust Gifts"), L. McGee's net worth was approximately $10 million.

62.     L. McGee's and G. McGee's first child was born in August 2018.

63.     On May 29, 2018, Jerome Lhote was removed as a trustee and was replaced by Mark Talucci ("Talucci") as an independent trustee of the LBM Trust.

64.     On November 2, 2020, Kim Heneghan ("Heneghan") was appointed as an independent trustee of the LBM Trust.

65.     On February 9, 2021, the LBM Trust was reconstituted as a Delaware trust.  The Commonwealth Trust Company was also appointed as an Administrative Trustee of the LBM Trust, and was replaced by Bryn Mawr Trust Company of Delaware on February 27, 2025.

66.     On February 21, 2026, Steve Feldman ("Feldman") was appointed as an independent trustee of the LBM Trust.

67.     L. McGee has received no distributions from the LBM Trust and has no right to distributions from the LBM Trust.

68.     Outside of the Trust Gifts, L. McGee has made no additional monetary contributions to the LBM Trust or any entities owned by the LBM Trust.

69.     Pursuant to the LBM Trust documents, L. McGee has the right to substitute assets with the LBM Trust for fair market value and has done so as follows (the "Substitution of Assets")[4]:

a.     On July 21, 2021, Heneghan and Talucci, as independent trustees of the LBM Trust, approved an Exercise of Right to Substitute Assets for L. McGee to transfer his shares of Adapt to the LBM Trust up to a value of $4 million in exchange for cash from the LBM Trust with such shares to be at fair market value using the average of the highest and lowest price at which a share was purchased on a public exchange on the date of transfer.

b.     On August 12, 2021, Heneghan and Talucci, as independent trustees of the LBM Trust, approved an Exercise of Right to Substitute Assets for L. McGee to transfer his shares of Adapt to the LBM Trust up to a value of $24 million in exchange for cash from the LBM Trust

---

[4] The primary source of the LBM Trust's assets is from Fresh Pond's interest in PPS (as set forth and defined below).

13

with such shares to be at fair market value using the average of the highest and lowest price at which a share was purchased on a public exchange on the date of transfer.

c. On September 3, 2021, Heneghan and Talucci, as independent trustees of the LBM Trust, approved an Exercise of Right to Substitute Assets for L. McGee to transfer his shares of Adapt to the LBM Trust up to a value of $10.5 million in exchange for cash from the LBM Trust with such shares to be at fair market value using the average of the highest and lowest price at which a share was purchased on a public exchange on the date of transfer.

d. On December 28, 2022, Heneghan and Talucci, as independent trustees of the LBM Trust, approved an Exercise of Right to Substitute Assets for L. McGee to transfer his shares of Adapt to the LBM Trust up to a value of $951,542.25 million in exchange for cash from the LBM Trust with such shares to be at fair market value using the average of the highest and lowest price at which a share was purchased on a public exchange on the date of transfer.

70. Neither L. McGee nor any other NY Co-Defendant holds a direct or indirect ownership interest in the LBM Trust.

71. The LBM Trust does not hold property belonging to L. McGee or any other NY Co-Defendant.

72. In the ordinary course, the LBM Trust invests funds in various business ventures.

73. The LBM Trust is not an alter ego of L. McGee nor is there any grounds to ignore the corporate formalities of the LBM Trust and its distinct legal identity from L. McGee. Moreover, as of this filing, SKAT has never obtained a court finding that the LBM Trust is an alter ego of L. McGee (or of any other NY Co-Defendant) or otherwise liable for the New York Judgment based upon any piercing of the corporate veil theory.

74. The LBM Trust is neither the sender nor recipient of any fraudulent transfers.

### C.    Fresh Pond and Its Florida Bank Account

75.    Fresh Pond was established on April 25, 2017.  The LBM Trust has at all times been the sole member of Fresh Pond.

76.    In 2016 or 2017, L. McGee was approached by an investment bank that was trying to sell certain distressed operating entities that provided respiratory therapy services in the United States called Braden Partners L.P. ("Braden") and Associated Healthcare Systems, Inc. ("AHS"), which were ultimately owned by a Japanese investment bank called Teijin Limited ("Teijin"). Braden and AHS were suffering annual losses of tens of millions of dollars and Teijin was looking to sell them.  QMES could not acquire Braden or AHS as it would violate its lending covenants with its secured lender.

77.    Nevertheless, the principal owner of the Family Office and QMES wanted to acquire Braden and AHS. Therefore, two new companies called PPS HME Holdings LLC ("PPS Holdco") and PPS HME LLC ("PPS"), a wholly owned subsidiary of PPS Holdco, were formed to purchase the equity interests of Braden and AHS.  PPS paid no consideration for its acquisition of Braden and AHS, but rather assumed the go-forward operational liabilities and Teijin contributed $29.5 million to Braden and AHS at closing of the acquisition to assist in covering those operating losses in the short term.  In short, other than a hopeful turnaround with a well healed backer (the Family Office) to fund operations for an indefinite period of time, it was unknown whether Braden and AHS (now PPS) would ever be profitable.

78.    Shortly after being formed, Fresh Pond became a 23.75% member in PPS Holdco (the "PPS Interest"), along with three other members who have no affiliation to Plaintiffs or L. McGee.

79.     L. McGee earned a $1 million consulting fee from PPS Holdco and PPS, paid to L. McGee through Bewley Consulting, Inc., for assisting with the negotiation of the transaction terms, due diligence and outlining the competitive landscape post-acquisition.  That fee was used to fund the $925K Gift to the LBM Trust. None of those funds came from any Cum Ex Trading.

80.     In 2018, PPS was sold to QMES Holdings LLC ("QMES Holdco") in exchange for QMES Holdco's units and cash.  Fresh Pond, as an equityholder of PPS, received those units and cash in proportion to its equity interest as part of that sale. Those shares and funds were never property of L. McGee.

81.     In 2020, Fresh Pond's shares in QMES Holdco's units converted into units in Adapt (formerly QMES).

82.     On April 15, 2022, 2321 Capital LLC, an entity wholly owned by L. McGee, sold its interest in a Tax Receivable Agreement dated November 8, 2019 between 2321 Capital LLC and Adapt (the "Fresh Pond TRA") to Fresh Pond at fair market value based upon a valuation conducted by an independent third party appraiser, Sobel Valuations, which valued the interest at $5,420,000.  The Fresh Pond TRA provided for payments from Adapt.  On March 6, 2025, Fresh Pond sold its interest in the Fresh Pond TRA to a non-affiliated third party which has generated cash for Fresh Pond which it has used to make investments on its own behalf or to distribute funds to its sole member, the LBM Trust.

83.     As an equityholder of Adapt, Fresh Pond has generated cash through dividends which were used to make additional investments on its own behalf or distributed to its sole member, the LBM Trust.

84. Fresh Pond conducts its business operations partially through the Fresh Pond Accounts which were opened in Palm Beach, Florida and are managed and administered by the Citizen's Bank Palm Beach, Florida branch.

85. The Fresh Pond Accounts are used solely for Fresh Pond's operating costs, including for making capital calls and other contractual payment obligations.

86. Neither L. McGee nor any other NY Co-Defendant holds a direct or indirect ownership interest in the Fresh Pond Accounts.

87. Fresh Pond does not hold property belonging to L. McGee or any other NY Co-Defendant.

88. In the ordinary course, Fresh Pond invests funds in various business ventures.

89. Fresh Pond is not an alter ego of L. McGee nor is there any grounds to ignore the corporate formalities of Fresh Pond and its distinct legal identity from L. McGee. Moreover, as of this filing, SKAT has never obtained a court finding that Fresh Pond is an alter ego of L. McGee (or of any other NY Co-Defendant) or otherwise liable for the New York Judgment based upon any piercing of the corporate veil theory.

90. Fresh Pond is neither the sender nor recipient of any fraudulent transfers.

**D.      LBM DME Holdings LLC**

91. LBM DME was established on April 20, 2018. The LBM Trust has at all times been the sole member of LBM DME.

92. On July 1, 2018, LBM DME was issued 4,926 incentive units (the "Profits Interest Grant") in QMES Holdco on behalf of L. McGee. The incentive units were subject to vesting and a distribution threshold and valued at $0.00 at the time of the Profits Interest Grant. The incentive units were also subject to forfeiture if L. McGee was no longer employed by QMES.

17

93.     In November 2019, as a profits interest holder of QMES, LBM DME was issued founder shares in QMES.

94.     LBM DME does not hold property belonging to L. McGee or any or any other NY Co-Defendant.

95.     LBM DME is not an alter ego of L. McGee nor is there any grounds to ignore the corporate formalities of LBM DME and its distinct legal identity from L. McGee. Moreover, as of this filing, SKAT has never obtained a court finding that LBM DME is an alter ego of L. McGee (or of any other NY Co-Defendant) or otherwise liable for the New York Judgment based upon any piercing of the corporate veil theory.

96.     LBM DME is neither the sender nor recipient of any fraudulent transfers from L. McGee.

**E.     Winston Real Estate Holdings LLC**

97.     Winston was established on December 8, 2021.  Fresh Pond has at all times been the sole member of Winston.

98.     Winston operates as an investment vehicle for real estate investment properties located in Florida.

99.     Neither L. McGee nor any other judgment debtor in the New York Litigation holds a direct or indirect ownership interest in any of Winston's accounts.

100.    Winston does not hold property belonging to L. McGee or any or any other NY Co-Defendant.

101.    Winston is not an alter ego of L. McGee nor is there any grounds to ignore the corporate formalities of Winston and its distinct legal identity from L. McGee. Moreover, as of this filing, SKAT has never obtained a court finding that Winston is an alter ego of L. McGee (or

NOT A CERTIFIED COPY

of any other NY Co-Defendant) or otherwise liable for the New York Judgment based upon any piercing of the corporate veil theory.

102. Winston is neither the sender nor recipient of any fraudulent transfers.

### F. Bailey Investments LLC

103. Bailey was established in February 2025. The LBM Trust has at all times been the sole member of Bailey.

104. Bailey conducts its business operations through its managers, Feldman and Sean Heyniger ("Heyniger"). Heyniger is located in Palm Beach, Florida.

105. Neither L. McGee nor any other judgment debtor in the New York Litigation holds a direct or indirect ownership interest in any of Bailey's accounts.

106. Bailey does not hold property belonging to L. McGee or any other NY Co-Defendant.

107. Bailey is not an alter ego of L. McGee nor is there any grounds to ignore the corporate formalities of Bailey and its distinct legal identity from L. McGee. Moreover, as of this filing, SKAT has never obtained a court finding that Bailey is an alter ego of L. McGee (or of any other NY Co-Defendant) or otherwise liable for the New York Judgment based upon any piercing of the corporate veil theory.

108. Bailey is neither the sender nor recipient of any fraudulent transfers.

### G. Louse Entities

109. Louse Investment was established in July 2022. The LBM Trust has at all times been the sole member of Louse. Louse Holdings and Louse PH were established in 2024. Louse Investment has at all times been the some member of Louse Holdings and Louse PH.

19

110.     Neither L. McGee nor any other judgment debtor in the New York Litigation holds a direct or indirect ownership interest in any of the Louse Entities' accounts.

111.     The Louse Entities do not hold property belonging to L. McGee or any other NY Co-Defendant.

112.     The Louse Entities are not an alter ego of L. McGee nor are there any grounds to ignore the corporate formalities of the Louse Entities and its distinct legal identity from L. McGee. Moreover, as of this filing, SKAT has never obtained a court finding that any Louse Entity is an alter ego of L. McGee (or of any other NY Co-Defendant) or otherwise liable for the New York Judgment based upon any piercing of the corporate veil theory.

113.     No Louse Entity is the sender nor recipient of any fraudulent transfers from L. McGee.

**H.     SKAT's Restraining Notice Directed at Fresh Pond's Florida Accounts**

114.     Since the New York Judgment was entered, SKAT has issued post-judgment discovery and a restraining notice on judgment debtor L. McGee.

115.     Rather than seek further discovery from the NY Co-Defendants, including L. McGee, on November 11, 2025, SKAT served Citizens and Chase with the Information Subpoenas and Restraining Notices seeking information pursuant to CPLR § 5224 and restraining any access to accounts in the name of not just L. McGee, but of 150 non-debtor entities, including Fresh Pond, LBM DME, and the LBM Family Trust, pursuant to CPLR § 5222.  Fresh Pond became aware of such Information Subpoenas and Restraining Notices upon receipt of a December 1, 2025 letter from Citizens and a November 25, 2025 letter from Chase. A true and correct copy of the letters, Information Subpoenas and Restraining Notices are attached as **Composite Exhibit A**.

116.     The Information Subpoenas seek broad discovery from Citizens and Chase regarding financial assets and holdings of Fresh Pond, LBM DME, and the LBM Family Trust, even though none of them are a party to the New York Litigation, have any liability to SKAT, nor have any assets in which L. McGee has an interest.  Further, each party is released pursuant to the Settlement Release.

117.     Under CPLR § 5222(d), within four days of service of the Restraining Notices on Chase and Citizens, SKAT was obligated to mail the judgment debtor a copy of the Restraining Notices along with a notice in the form prescribed in subdivision (e). SKAT was to send these items via either first class mail or personal delivery to the judgment debtor's residence address. SKAT declined to serve the required documents on L. McGee (as the judgment debtor), Fresh Pond, LBM DME, or the LBM Family Trust. Fresh Pond, LBM DME, and the LBM Family Trust only became aware of the Restraining Notices upon receipt of the letters from Citizens and Chase. Notwithstanding the fact that none of Fresh Pond, LBM DME, or the LBM Family Trust are a judgment debtor in the New York Litigation, this failure to comply with CPLR § 5222(d) rendered the Restraining Notices issued by SKAT invalid.

118.     Moreover, SKAT never sought or obtained any order from a Florida court authorizing restraint of the Fresh Pond Accounts, or indeed any other Florida assets, and prior to service of the Restraining Notices SKAT never domesticated the New York Judgment in Florida pursuant to the Florida Enforcement of Foreign Judgments Act. *See* §§55.501-.509, Florida Statutes.

119.     Nonetheless, in response to the Restraining Notices, Citizens treated the Fresh Pond Accounts as restrained, limiting Fresh Pond's access to its own funds.

120.     On December 9, 2025, Fresh Pond filed a Motion for Order to Show Cause Pursuant to Fed. R. Civ. P. 69 and CPRL § 5240 based upon the improper restraints on the Fresh Pond Accounts and advising the NY Court that it lacked jurisdiction over Fresh Pond's Florida accounts ("Fresh Pond's Motion").

121.     SKAT, acknowledging the flaws in the Restraining Notices, sought leave to domesticate the New York Judgment in the Southern District of Florida and has now done so.

122.     After several months of briefing issues before the NY Court, a stipulated order was entered on Fresh Pond's Motion whereby SKAT would cause the restraints against the Fresh Pond Accounts to be lifted on or before March 16, 2026 and Citizens' counsel has confirmed those restraints have been lifted.  SKAT also agreed that any further action to restrain the Fresh Pond Accounts would occur in Florida.

123.     Plaintiffs believe that without relief from this Court, SKAT will continue to improperly take action against Plaintiffs to collect on its judgment despite the fact Plaintiffs owe SKAT no monies under the NY Judgment, or any possible theory of fraudulent transfer, alter ego, or veil piercing.

### <u>COUNT I – DECLARATORY JUDGMENT (The Trust Gifts and Substitution of Assets)</u>
(*The LBM Trust v. SKAT*)

124.     The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

125.     A bona fide, actual, present, and justiciable controversy exists between the LBM Trust and SKAT as to whether SKAT may bring fraudulent transfer claims against the LBM Trust.

126.     The Trust Gifts predated the Settlement Agreement and any claim by SKAT that the Trust Gifts were fraudulent transfers was released under the Settlement Release as the LBM Trust was a released party thereunder.

NOT A CERTIFIED COPY

127.    No later than 2019, SKAT had the ability to require full financial disclosures relating to L. McGee's assets, including any estate planning vehicles such as the Plaintiffs, and initial drafts of the Settlement Agreement included such a requirement, but SKAT decided to proceed with the final Settlement Agreement that excluded that requirement.

128.    In addition, L. McGee sat for an interview with the Danish authorities in January of 2021 at which time SKAT could have again inquired of L. McGee's assets, and the Danish authorities did in fact inquire about some of those assets.

129.    In addition, L. McGee was not insolvent at the time of the Trust Gifts or the Substitution of Assets and was not rendered insolvent as a result of the Trust Gifts or the Substitution of Assets.

130.    Furthermore, L. McGee was not aware that he would be liable for the NY Judgment at the time of the Trust Gifts and did not make the Trust Gifts with the intent to hinder, delay or defraud SKAT.

131.    As for the Substitution of Assets in 2021, they were fair exchanges of value based upon the published price of the stock of Adapt on the New York Stock Exchange and cannot be considered fraudulent.  If anything, L. McGee benefited from those transfers given that, had he sold the Adapt stock through a public sale, he would have had to pay a substantial amount of those proceeds in taxes to the IRS.  Accordingly, the Substitution of Assets were not made with the intent to hinder, delay or defraud SKAT.

132.    A cause of action with respect to a fraudulent transfer is extinguished unless brought within 4 years of when the transfer was made or obligation was incurred or, if later, within 1 year after the transfer or obligation was or could have reasonably been discovered by the claimant.[5]

---

[5] While Plaintiffs assert that Florida law should apply (Fla. Sta. §§ 726.105, 726.106 and 726.110), even if this Court were to determine that another state's fraudulent transfer law should apply, most states have adopted some form of

133.     Even if the Court determines that the Trust Gifts or the Substitution of Assets were in fact fraudulent transfers, such actions are time barred as the Trust Gifts and the Substitution of Assets occurred prior to the four-year statute of limitations.

134.     There is no basis for SKAT to assert that it could not have learned of the Trust Gifts as it had a right to demand full financial disclosures prior to entering into the Settlement Agreement in 2019 and did not do so.

135.     In addition, the Danish authorities could have inquired about any transfer of asset by L. McGee during his 2021 interview but again failed to do so.

136.     Furthermore, given L. McGee's position at Adapt, the Substitution of Assets were public knowledge because L. McGee was required to file a Form 4 with the Securities and Exchange Commission with a trading plan relating to the transfer of his Adapt shares.  There is no basis to say that L. McGee or Fresh Pond attempted to conceal such transfers.

137.     SKAT disputes, or is reasonably expected to dispute, the LBM Trust's assertions, or is reasonably expected to contend that it has the right to restrain and collect against the LBM Trust under the New York Judgment, New York law, and Florida law.

## PRAYER FOR RELIEF

WHEREFORE, the LBM Trust respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq*., that:

A.     any collection activities by SKAT against the LBM Trust must occur in Florida and must comply with Florida law;

B.     the Trust Gifts are released claims under the Settlement Agreement;

---

fraudulent transfer act providing for similar statutes of limitations including New York (where L. McGee lived from 2012-2019) and Pennsylvania (where L. McGee lived from 2019-2021).  *See* 12 Pa. C.S. § 5109, NY CPLR § 213(1) (pre-2020 transfers) and NY DCL §279 (post-2020 transfers).  L. McGee moved to Florida in 2021.

C.     any fraudulent transfer claim against the LBM Trust relating to the Trust Gifts or the Substitution of Assets are barred by the statute of limitations;

D.     that the LBM Trust was not the recipient of any fraudulent transfers from L. McGee;

E.     the LBM Trust should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

F.     such other and further relief should be granted as the Court deems just and proper.

### COUNT II – DECLARATORY JUDGMENT(Profits Interest Grant)
(*LBM DME v. SKAT*)

138.     The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

139.     A bona fide, actual, present, and justiciable controversy exists between LBM DME and SKAT as to whether SKAT may bring fraudulent transfer claims against LBM DME.

140.     The Profits Interest Grant in 2018 was subject to vesting and a distribution threshold and valued at $0.00 at the time it was made.  The incentive units were also subject to forfeiture if L. McGee was no longer employed by QMES.

141.     A cause of action with respect to a fraudulent transfer is extinguished unless brought within 4 years of when the transfer was made or obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant.

142.     Even if the Court determines that the Profits Interest Grant constitutes a fraudulent transfer, such action is time barred as it occurred prior to the four-year statute of limitations.

143.     SKAT began investigating L. McGee in August of 2015 in connection with Danish prosecutors, culminating in the Settlement Agreement in May of 2019.  Prior to entering into the Settlement Agreement, SKAT did not require any financial disclosures from L. McGee.  In addition, L. McGee sat for a lengthy interview with the Danish authorities in 2021 where he

provided responses to any financial questions asked of him. If such fraudulent transfers existed, SKAT should have reasonably discovered any such transfers at the latest in 2021 during the course of the Investigation.

144.    The Profits Interest Grant predated the Settlement Agreement and any claim by SKAT that the Profits Interest Grant was a fraudulent transfer was released under the Settlement Release as LBM DME was a released party thereunder.

145.    L. McGee was not insolvent at the time of the Profits Interest Grant and was not rendered insolvent by the Profits Interest Grant.  In fact, the Profits Interest Grant had no value at the time it was issued to LBM DME.

146.    L. McGee did not make the Profits Interest Grant with the intent to hinder, delay or defraud SKAT.

147.    SKAT disputes, or is reasonably expected to dispute, LBM DME's assertions, or is reasonably expected to contend that it has the right to restrain and collect against LBM DME under the New York Judgment, New York law, and Florida law.

### **PRAYER FOR RELIEF**

WHEREFORE, LBM DME respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq*., that:

A.    any collection activities by SKAT against LBM DME must occur in Florida and must comply with Florida law;

B.    the Profits Interest Grant is a released claim under the Settlement Agreement;

C.    any fraudulent transfer claim against LBM DME relating to the Profits Interest Grant is barred by the statute of limitations;

D.    that LBM DME was not the recipient of any fraudulent transfers from L. McGee;

E.      that LBM DME's accounts were not funded with funds from L. McGee, the judgment debtor, so its assets are not subject to attachment by SKAT, the judgment creditor;

F.      LBM DME should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

G.      such other and further relief should be granted as the Court deems just and proper.

## COUNT III – DECLARATORY JUDGMENT (Fresh Pond TRA and PPS Interest)
### (*Fresh Pond v. SKAT*)

148.    The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

149.    A bona fide, actual, present, and justiciable controversy exists between Fresh Pond and SKAT as to whether SKAT may bring fraudulent transfer claims against Fresh Pond.

150.    Fresh Pond was formed in 2017 and was not formed with the intent to hinder, delay or defraud SKAT.

151.    Fresh Pond's receipt of the PPS Interest in 2017 was not made with the intent to hinder, delay or defraud SKAT.

152.    Fresh Pond paid nothing to obtain the PPS Interest. At the point that Fresh Pond acquired the PPS Interest, Braden and AHS were operating at a significant loss. Neither Fresh Pond nor anyone else could have predicted the turnaround and success of PPS and the other entities that subsequently created Adapt.

153.    L. McGee was not insolvent at the time Fresh Pond was created or when Fresh Pond received the PPS Interest, nor was he rendered insolvent by the same.

154.    A cause of action with respect to a fraudulent transfer is extinguished unless brought within 4 years of when the transfer was made or obligation was incurred or, if later, within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant.

155. Even if the Court determines that Fresh Pond's acquisition of the PPS Interest constitutes a fraudulent transfer, such action is time barred as it occurred prior to the four-year statute of limitations.

156. SKAT began investigating L. McGee in August of 2015 in connection with Danish prosecutors, culminating in the Settlement Agreement in May of 2019. Prior to entering into the Settlement Agreement, SKAT did not require any financial disclosures from L. McGee. In addition, L. McGee sat for a lengthy interview with the Danish authorities in 2021 where he provided responses to any financial questions asked of him. If such fraudulent transfers existed, SKAT should have reasonably discovered any such transfers at the latest in 2021 during the course of the Investigation.

157. Fresh Pond's acquisition of the PPS Interest predated the Settlement Agreement and any claim by SKAT that Fresh Pond's acquisition of the PPS Interest was a fraudulent transfer was released under the Settlement Release as Fresh Pond was a released party thereunder.

158. On April 15, 2022, 2321 Capital LLC, an entity wholly owned by L. McGee, sold its interest in the Fresh Pond TRA to Fresh Pond at fair market value based upon a valuation conducted by an independent third party appraiser, Sobel Valuations, and cannot be considered fraudulent.

159. L. McGee was not insolvent at the time of the sale of the Fresh Pond TRA and was not rendered insolvent by the sale of the Fresh Pond TRA.

160. ▮▮▮▮▮▮, through 2321 Capital, did not sell the Fresh Pond TRA to Fresh Pond with the intent to hinder, delay or defraud SKAT.

161. SKAT disputes, or is reasonably expected to dispute, Fresh Pond's assertions, or is reasonably expected to contend that it has the right to restrain and collect against Fresh Pond under the New York Judgment, New York law, and Florida law.

**PRAYER FOR RELIEF**

WHEREFORE, Fresh Pond respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq.*, that:

A. any collection activities by SKAT against Fresh Pond must occur in Florida and must comply with Florida law;

B. The creation of Fresh Pond and its receipt of the PPS Interest was not a fraudulent transfer from L. McGee;

C. the sale from 2321 Capital of the Fresh Pond TRA to Fresh Pond was not a fraudulent transfer from L. McGee;

D. that Fresh Pond's accounts were not funded with funds from L. McGee, the judgment debtor, so its assets are not subject to attachment by SKAT, the judgment creditor;

E. Fresh Pond should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

F. such other and further relief should be granted as the Court deems just and proper.

**COUNT IV – DECLARATORY JUDGMENT (Winston)**
(*Winston v. SKAT*)

162. The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

163. A bona fide, actual, present, and justiciable controversy exists between Winston and SKAT as to whether SKAT may bring fraudulent transfer claims against Winson.

29

164. Winston was established on December 8, 2021, and Fresh Pond has at all times been the sole member of Winston.

165. Winston operates as an investment vehicle for real estate investment properties located in Florida.

166. Neither L. McGee nor any other judgment debtor in the New York Litigation holds a direct or indirect ownership interest in any of Winston's assets.

167. Winston does not hold property belonging to L. McGee or any or any other NY Co-Defendant.

168. Winston is neither the sender nor recipient of any fraudulent transfers from L. McGee.

169. Nevertheless, SKAT disputes, or is reasonably expected to dispute, Winston's assertions, or is reasonably expected to contend that it has the right to restrain and collect against Winston under the New York Judgment, New York law, and Florida law.

## **PRAYER FOR RELIEF**

WHEREFORE, Winston respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq.*, that:

A.    any collection activities by SKAT against Winston must occur in Florida and must comply with Florida law;

B.    that Winston has not been funded with funds from L. McGee, the judgment debtor, so its assets are not subject to attachment by SKAT, the judgment creditor;

C.    that Winston was not the recipients of any fraudulent transfers from L. McGee;

D.    Winston should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

30

E.      such other and further relief should be granted as the Court deems just and proper.

## COUNT V – DECLARATORY JUDGMENT (Bailey)
(*Bailey v. SKAT*)

170.    The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

171.    A bona fide, actual, present, and justiciable controversy exists between Bailey and SKAT as to whether SKAT may bring fraudulent transfer claims against Bailey.

172.    Bailey was established in February 2025, and the LBM Trust has at all times been the sole member of Bailey.

173.    Bailey conducts its business operations through its managers, Feldman and Heyniger.

174.    Neither L. McGee nor any other judgment debtor in the New York Litigation holds a direct or indirect ownership interest in the any of Bailey's assets.

175.    Bailey does not hold property belonging to L. McGee or any other NY Co-Defendant.

176.    Bailey is neither the sender nor recipient of any fraudulent transfers from L. McGee.

177.    Nevertheless, SKAT disputes, or is reasonably expected to dispute, Bailey's assertions, or is reasonably expected to contend that it has the right to restrain and collect against Bailey under the New York Judgment, New York law, and Florida law.

### PRAYER FOR RELIEF

WHEREFORE, Bailey respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq.*, that:

A.      any collection activities by SKAT against Bailey must occur in Florida and must comply with Florida law;

B.      that Bailey's assets were not funded with funds from L. McGee, the judgment debtor, so its assets are not subject to attachment by SKAT, the judgment creditor;

C.      that Bailey was not the recipients of any fraudulent transfers from L. McGee;

D.      Bailey should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

178.    such other and further relief should be granted as the Court deems just and proper.

### COUNT VI – DECLARATORY JUDGMENT (the Louse Entities)
(*The Louse Entities v. SKAT*)

179.    The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

180.    A bona fide, actual, present, and justiciable controversy exists between the Louse Entities and SKAT as to whether SKAT may bring fraudulent transfer claims against the Louse Entities.

181.    Louse Investment was established in July 2022.  The LBM Trust has at all times been the sole member of Louse Investment.

182.    Louse Holdings and Louse PH were established in 2024. Louse Investment has at all times been the sole member of Louse Holdings and Louse PH.

183.    Neither L. McGee nor any other judgment debtor in the New York Litigation holds a direct or indirect ownership interest in the any of the Louse Entities' assets.

184.    The Louse Entities do not hold property belonging to L. McGee or any other NY Co-Defendant.

185.    No Louse Entity is the sender nor recipient of any fraudulent transfers from L. McGee.

NOT A CERTIFIED COPY

186. Nevertheless, SKAT disputes, or is reasonably expected to dispute, the Louse Entities' assertions, or is reasonably expected to contend that it has the right to restrain and collect against the Louse Entities under the New York Judgment, New York law, and Florida law.

## PRAYER FOR RELIEF

WHEREFORE, the Louse Entities respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq*., that:

A. any collection activities by SKAT against the Louse Entities must occur in Florida and must comply with Florida law;

B. that the Louse Entities' assets were not funded with funds from L. McGee, the judgment debtor, so their assets are not subject to attachment by SKAT, the judgment creditor;

C. that the Louse Entities were not the recipients of any fraudulent transfers from L. McGee;

D. The Louse Entities should be awarded their reasonable attorneys' fees and costs to the extent permitted by law; and

E. such other and further relief should be granted as the Court deems just and proper.

## COUNT VII – DECLARATORY JUDGMENT (Alter Ego/Veil Piercing, the LBM Trust)
### (*The LBM Trust v. SKAT*)

187. The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

188. At all points in time there have been independent trustees of the LBM Trust. While L. McGee has served as an investment trustee of the LBM Trust, and at times as a manager of certain of the Plaintiffs, he has never been a beneficiary of the LBM Trust, received a distribution from the LBM Trust, or had a right to any of the LBM Trust's assets.

189. L. McGee, in his role with the LBM Trust, was required to abide by all corporate formalities and overseen by the LBM Trust (through the independent trustees).

190. The LBM Trust was formed for the purposes of estate planning and funded by L. McGee at a time when L. McGee's net worth was in excess of $10 million. At no point when the LBM Trust was funded was L. McGee aware that he could be subject to a joint and several liability judgment totaling over $169 million when he had received nowhere near that number from the Cum Ex Trading and voluntarily refunded proceeds therefrom to SKAT.

191. L. McGee has never had a right to direct distributions from the LBM Trust. That right is in the sole discretion of the independent trustees, and no distributions have been made or authorized by the independent trustees to L. McGee.

192. L. McGee has never commingled any personal assets with that of the LBM Trust. Any transfer of assets between L. McGee and the LBM Trust have been at fair market value, as determined by either the publicly available and readily determinable value of such assets (such as the Adapt stock) or based upon a fair market valuation conducted by an independent third-party appraiser.

193. The primary assets of the LBM Trust have derived from Fresh Pond's original equity interest in PPS, which it paid no value to obtain. At the point that Fresh Pond acquired that interest, Braden and AHS were operating at a significant loss. Neither Fresh Pond nor anyone else could have predicted the turnaround and success of PPS and the other entities that subsequently created Adapt.

194. The LBM Trust's bank accounts have never been used by L. McGee and have at all times been used solely for the LBM Trust's business operations.

34

195. The LBM Trust was not established to be an engine of fraud for L. McGee to shield his personal assets from any misconduct.

196. A bona fide, actual, present, and justiciable controversy exists between the LBM Trust and SKAT as to whether SKAT may lawfully restrain the LBM Trust's assets, given SKAT cannot demonstrate that the LBM Trust is an alter ego of L. McGee or, otherwise, that the LBM Trust's corporate veil should be pierced.

**PRAYER FOR RELIEF**

WHEREFORE, the LBM Trust respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq.*, that:

A. the LBM Trust is not an alter ego of L. McGee;

B. There is no basis to pierce the LBM Trust's corporate veil and make it liable for the New York Judgment;

C. the LBM Trust should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

D. such other and further relief should be granted as the Court deems just and proper.

**COUNT VIII – DECLARATORY JUDGMENT (Alter Ego/Veil Piercing, LBM DME)**
(*LBM DME v. SKAT*)

197. The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

198. At no point when ███████ caused LBM DME to be issued the Profits Interest Grant in QMES was L. McGee aware that he could be subject to a joint and several liability judgment totaling over $169 million when he had received nowhere near that number from the Cum Ex Trading, the proceeds of which were refunded to SKAT.

199.    L. McGee has never had a right to receive distributions from LBM DME. That right is in the sole discretion of LBM DME's sole owner, the LBM Trust, and no distributions have been made or authorized for LBM DME to distribute any of its assets to L. McGee.

200.    L. McGee has never commingled any personal assets with that of LBM DME nor has he had any right to any of LBM DME's assets.

201.    LBM DME's bank accounts have never been used by L. McGee and have at all times been used solely for LBM DME's business operations.

202.    LBM DME was not established to be an engine of fraud for L. McGee to shield his personal assets from any misconduct.

203.    L. McGee has never been an owner or member of LBM DME nor has he ever had a right to LBM DME's assets.

204.    A bona fide, actual, present, and justiciable controversy exists between LBM DME and SKAT as to whether SKAT may lawfully restrain LBM DME's assets, given SKAT cannot demonstrate that LBM DME is an alter ego of L. McGee or, otherwise, that LBM DME's corporate veils should be pierced.

### PRAYER FOR RELIEF

WHEREFORE, LBM DME respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq*., that:

A.    LBM DME is not an alter ego of L. McGee;

B.    There is no basis to pierce LBM DME's corporate veil and make it liable for the New York Judgment;

C.    LBM DME should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

D.      such other and further relief should be granted as the Court deems just and proper.

**COUNT IX – DECLARATORY JUDGMENT (Alter Ego/Veil Piercing, Fresh Pond)**
(*Fresh Pond v. SKAT*)

205.    The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

206.    L. McGee has never had a right to receive distributions from Fresh Pond. That right is in the sole discretion of Fresh Pond's sole owner, the LBM Trust, and no distributions have been made or authorized for Fresh Pond to distribute any of its assets to L. McGee.

207.    L. McGee has never commingled any personal assets with that of Fresh Pond.  Any transfer of assets between L. McGee and Fresh Pond have been at fair market value, as determined by either the publicly available and readily determinable value of such assets (such as the Adapt stock) or based upon a fair market valuation conducted by an independent third-party appraiser.

208.    The primary assets of Fresh Pond derived from the PPS Interest, which it paid no value to obtain.  At the point that ███████ acquired that interest, Braden and AHS were operating at a significant loss. Neither Fresh Pond nor anyone else for that matter could have predicted the turnaround and success of PPS and the other entities that subsequently created Adapt.

209.    Fresh Pond's bank accounts have never been used by L. McGee and have at all times been used solely for Fresh Pond's business operations.

210.    Fresh Pond was not established to be an engine of fraud for L. McGee to shield his personal assets from any misconduct.

211.    L. McGee has never been an owner or member of Fresh Pond nor has he ever had a right to Fresh Pond's assets.

212.    A bona fide, actual, present, and justiciable controversy exists between Fresh Pond and SKAT as to whether SKAT may lawfully restrain Fresh Pond's assets, given SKAT cannot

37

demonstrate that Fresh Pond is an alter ego of L. McGee or, otherwise, that Fresh Pond's corporate veils should be pierced.

**PRAYER FOR RELIEF**

WHEREFORE, Fresh Pond respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq*., that:

A.  Fresh Pond is not an alter ego of L. McGee;

B.  There is no basis to pierce Fresh Pond's corporate veil and make it liable for the New York Judgment;

C.  Fresh Pond should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

D.  such other and further relief should be granted as the Court deems just and proper.

**COUNT X – DECLARATORY JUDGMENT (Alter Ego/Veil Piercing, Winston)**
(*Winston v. SKAT*)

213.  The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

214.  L. McGee has never had a right to receive distributions from Winston. That right is in the sole discretion of Winston's sole owner, Fresh Pond, and no distributions have been made or authorized for Winston to distribute any of its assets to L. McGee.

215.  L. McGee has never commingled any personal assets with that of Winston nor has he had any right to any of Winston's assets.

216.  Winston's bank accounts have never been used by L. McGee and have at all times been used solely for Winston's business operations.

217.  Winston was not established to be an engine of fraud for L. McGee to shield his personal assets from any misconduct.

38

218.    L. McGee has never been an owner or member of Winston nor has he ever had a right to Winston's assets.

219.    A bona fide, actual, present, and justiciable controversy exists between Winston and SKAT as to whether SKAT may lawfully restrain Winston's assets, given SKAT cannot demonstrate that Winston is an alter ego of L. McGee or, otherwise, that Winston's corporate veils should be pierced.

## PRAYER FOR RELIEF

WHEREFORE, Winston respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq*., that:

A.    Winston is not an alter ego of L. McGee;

B.    There is no basis to pierce Winston's corporate veil and make it liable for the New York Judgment;

C.    Winston should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

D.    such other and further relief should be granted as the Court deems just and proper.

## COUNT XI – DECLARATORY JUDGMENT (Alter Ego/Veil Piercing, Bailey)
(*Bailey v. SKAT*)

220.    The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

221.    L. McGee has never had a right to receive distributions from Bailey. That right is in the sole discretion of Bailey's sole owner, the LBM Trust, and no distributions have been made or authorized for Bailey to distribute any of its assets to L. McGee.

222.    L. McGee has never commingled any personal assets with that of Bailey nor has he had any right to any of Bailey's assets.

223.    Bailey's bank accounts have never been used by L. McGee and have at all times been used solely for Bailey's business operations.

224.    Bailey was not established to be an engine of fraud for L. McGee to shield his personal assets from any misconduct.

225.    L. McGee has never been an owner or member of Bailey nor has he ever had a right to Bailey's assets.

226.    A bona fide, actual, present, and justiciable controversy exists between Bailey and SKAT as to whether SKAT may lawfully restrain Bailey's assets, given SKAT cannot demonstrate that Bailey is an alter ego of L. McGee or, otherwise, that Bailey's corporate veils should be pierced.

## PRAYER FOR RELIEF

WHEREFORE, Bailey respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq.*, that:

A.      Bailey is not an alter ego of L. McGee;

B.      There is no basis to pierce Bailey's corporate veil and make it liable for the New York Judgment;

C.      Bailey should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

D.      such other and further relief should be granted as the Court deems just and proper.

## COUNT XII – DECLARATORY JUDGMENT (Alter Ego/Veil Piercing, the Louse Entities)
(*The Louse Entities v. SKAT*)

227.    The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

NOT A CERTIFIED COPY

228.     L. McGee has never had a right to receive distributions from the Louse Entities. That right is in the sole discretion of Louse Entities' sole owners, either the LBM Trust (for Louse Investment) or Louse Investment (for Louse Holdings and Louse PH), and no distributions have been made or authorized for the Louse Entities to distribute any of its assets to L. McGee.

229.     L. McGee has never commingled any personal assets with that of the Louse Entities nor has he had any right to any of the Louse Entities' assets.

230.     The Louse Entities' bank accounts have never been used by L. McGee and have at all times been used solely for the Louse Entities' business operations.

231.     The Louse Entities were not established to be an engine of fraud for L. McGee to shield his personal assets from any misconduct.

232.     L. McGee has never been an owner or member of the Louse Entities nor has he ever had a right to the Louse Entities' assets.

233.     A bona fide, actual, present, and justiciable controversy exists between the Louse Entities and SKAT as to whether SKAT may lawfully restrain the Louse Entities' assets, given SKAT cannot demonstrate that the Louse Entities are an alter ego of L. McGee or, otherwise, that the Louse Entities' corporate veils should be pierced.

## **PRAYER FOR RELIEF**

WHEREFORE, the Louse Entities respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq*., that:

A.     The Louse Entities are not alter egos of L. McGee;

B.     There is no basis to pierce the Louse Entities' corporate veil and make them liable for the New York Judgment;

NOT A CERTIFIED COPY

41

C.      The Louse Entities should be awarded their reasonable attorneys' fees and costs to the extent permitted by law; and

D.      such other and further relief should be granted as the Court deems just and proper.

### COUNT XIII – DECLARATORY JUDGMENT (Release)
*(All Plaintiffs v. SKAT)*

234.    The allegations set forth in paragraphs 1-123 are incorporated herein by reference as if set forth herein.

235.    SKAT executed the Settlement Agreement knowingly and voluntarily. Under the Settlement Release, SKAT released all causes of action that could have been raised against L. McGee, his wife, children, and any and all affiliated entities and trusts of L. McGee and G. McGee.

236.    Accordingly, any claims by SKAT of fraud, fraudulent transfer, or any other claim seeking to impose liability and a right to recovery from assets of the LBM Trust, LBM DME, or Fresh Pond for money transferred to those entities before the Settlement Release are contractually precluded.

237.    Moreover, any gains from asset transfers to the LBM Trust, LBM DME, or Fresh Pond would likewise be shielded from any collection efforts by SKAT.

238.    Finally, any transfer of assets to the other Plaintiffs from the LBM Trust, LBM DME, or Fresh Pond from assets received by the LBM Trust, LBM DME, or Fresh Pond prior to the Settlement Agreement (or from gains from those funds) are likewise not reachable assets pursuant to the Settlement Release. Consequently any derivative increase in value to those entities, or related entities, from those transfers are not subject to claims by SKAT.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that the Court enter judgment in its favor declaring, pursuant to Florida Statute § 86.011 *et seq.*, that:

42

A.      any transfer of assets to the LBM Trust, LBM DME, or Fresh Pond prior to the Settlement Release are released and not subject to collection activities by SKAT in satisfaction of the New York Judgment;

B.      any increase in the value from the transfer of assets to the LBM Trust, LBM DME, or Fresh Pond that occurred prior to the Settlement Release are released and not subject to collection activities by SKAT in satisfaction of the New York Judgment;

C.      any transfer of assets from the LBM Trust, LBM DME, or Fresh Pond to the other Plaintiffs from either assets transferred prior to the Settlement Release or gains from assets transferred prior to the Settlement Release are released and not subject to collection activities by SKAT in satisfaction of the New York Judgment;

D.      Plaintiffs should be awarded its reasonable attorneys' fees and costs to the extent permitted by law; and

E.      such other and further relief should be granted as the Court deems just and proper.

Dated: March 19, 2026

/s/ *Roland Potts*
Roland Potts
Florida Bar No.: 87081
rpotts@foley.com
ycenteno@foley.com
Andrea Cunha
Florida Bar No.: 42015
Andrea.cunha@foley.com
anita.gomez@foley.com
Quentin R. Welborn
Florida Bar No.: 1032613
quentin.welborn@foley.com
natali.garcia@foley.com
eupshur@foley.com
**Foley & Lardner LLP**
2 S. Biscayne Blvd., Suite 1900
Miami, FL 33131
Phone:  305.482.8400
Fax:  305.482.8600

## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

KIM HENEGHAN, MARK TALUCCI AND STEVE FELDMAN, AS TRUSTEES OF THE LBM FAMILY TRUST DATED FEBRUARY 9, 2021, FRESH POND INVESTMENT LLC, WINSTON REAL ESTATE HOLDINGS LLC, BAILEY INVESTMENTS LLC, LBM DME HOLDINGS LLC, LOUSE INVESTMENT LLC, LOUSE PROPERTY HOLDINGS LLC, AND LOUSE HOLDINGS LLC,

      Plaintiff,

vs.

SKATTEFORVALTNINGEN,

      Defendant.

_____/

**Case No.**

**Division:**

NOT A CERTIFIED COPY

## SUMMONS

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

      **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint, in this action on Defendant:

      **SKATTEFORVALTNINGEN**
      c/o Danish Central Authority for Service
      Retten på Frederiksberg
      Howitzvej 32
      2000 Frederiksberg
      Denmark

      The Defendant is hereby required to serve written defenses to the Complaint on the Plaintiffs' attorney, whose name and address is:

      Roland Potts, Esq.
      Andrea Cunha, Esq.
      Quentin Welborn, Esq.
      FOLEY & LARDNER LLP
      2 S. Biscayne Blvd., Suite 1900
      Miami, FL 33131

within **TWENTY (20)** days after service of this Summons on the Defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on the Plaintiff's attorney or immediately thereafter.  If the Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint.

        **DATED** on _____, 2026.


                                         Clerk of the Circuit Court

**(COURT SEAL)**

                                      By:_____
                                          As Deputy Clerk


*If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings, Jr., Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway, West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

NOT A CERTIFIED COPY

2

**IMPORTANTE**

Usted ha sido demandado legalmente.  Tiena veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda ajunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo, o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**<u>IMPORTANT</u>**

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours  consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

3



**MIKE CARUSO**

**RECEIPT**

6199911

CLERK OF THE CIRCUIT COURT & COMPTROLLER
PALM BEACH COUNTY, FLORIDA

Printed On:
03/19/2026 12:34
Page 1 of 1

| Receipt Number: 6199911 - Date 03/19/2026  Time 12:34PM | | | |
|---|---|---|---|
| **Received of:** | Foley and Lardner LLP<br>301 E. Pine Street<br>Suite 1200<br>Orlando, FL 32801 | | |
| **Cashier Name:** | ADMIN | **Balance Owed:** | 411.00 |
| **Cashier Location:** | E-Filing | **Total Amount Paid:** | 411.00 |
| **Receipt ID:** | 12665061 | **Remaining Balance:** | 0.00 |
| **Division:** | AH: Circuit Civil Central - AH(Civil) | | |

**Case# 50-2026-CA-003150-XXXA-MB -- PLAINTIFF/PETITIONER: FRESH POND INVESTMENT LLC**

| Item | Balance | Paid | Bal Remaining |
|---|---|---|---|
| Fees | 411.00 | 411.00 | 0.00 |
| **Case Total** | **411.00** | **411.00** | **0.00** |

| Payments | | |
|---|---|---|
| **Type** | **Ref#** | **Amount** |
| EFiling_CREDITCARD | 18369210 | 411.00 |
| **Total Received** | | **411.00** |
| **Total Paid** | | **411.00** |

**How was your service today?**  Please visit www.mypalmbeachclerk.com/survey or send your feedback to clerkweb@mypalmbeachclerk.com.

**For office locations and information about Clerk & Comptroller services:**
Visit www.mypalmbeachclerk.com or call (561) 355-2996.

NOT A CERTIFIED COPY

IN THE CIRCUIT COURT OF THE FIFTEENTH
JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION: "AH"
CASE NO.: 502026CA003150XXXAMB

FRESH POND INVESTMENT LLC,
WINSTON REAL ESTATE HOLDINGS LLC,
BAILEY INVESTMENTS LLC,
et al.,
      Plaintiff/Petitioners

vs.

SKATTEFORVALTNINGEN,
      Defendant/Respondent.

_____/

## UNIFORM DIFFERENTIATED CASE MANAGEMENT ORDER
## AND ORDER SETTING TRIAL
(DCMSNT)

**THIS MATTER** is a Circuit Civil case calling for a non-jury trial (or streamlined jury by stipulation or court order). Pursuant to Fla. R. Gen. Prac. & Jud. Admin. 2.250(a)(1)(B) and 2.545(b), and Fifteenth Judicial Circuit Administrative Order 3.110 (as amended), **Plaintiff/Petitioner is directed to serve this Order upon each Defendant/Respondent with the initial Complaint/Petition and Summons**.

It is hereby **ORDERED AND ADJUDGED** that this case is designated to the **STREAMLINED TRACK** for time to disposition. The deadlines and procedures set forth in this Order will be strictly enforced unless changed by court order.

Consistent with the Professionalism Expectations of the Florida Supreme Court and the Florida Bar, the parties and counsel are expected to govern themselves at all times with a spirit of cooperation, professionalism and civility. They are expected to accommodate each other whenever reasonably possible and eliminate disputes by reasonable agreements. Self-Represented/*Pro Se* Litigants (i.e., those without counsel) are held to the same procedural and legal obligations as are imposed upon counsel.

I. **SCHEDULING**

A. **Calendar Call**

**YOU MUST APPEAR FOR A MANDATORY CALENDAR CALL on June 11, 2027 at 8:45 am**. The parties must be ready to try the case by that date. The actual trial period begins on the docket associated with this Calendar Call date as provided in Divisional Instructions or by court order.

Calendar Call may be conducted in person, via Zoom or by e-calendar. All parties are instructed to review the Court's Divisional Instructions for specific procedures at

Page **1** of **11**

Case No. 50-2026-CA-003150-XXXA-MB

www.15thcircuit.com/divisions.

At the Calendar Call, the Court may conduct a final case management conference. Attorneys who appear for Calendar Call must be prepared on all pending matters and have authority to make representations to the Court and enter into binding agreements concerning motions, issues, and scheduling. These include issues raised by the parties' Pre-Trial Stipulation; trial procedures; jury selection procedures; jury instructions and objections; and the need for any special equipment, courtroom facilities, or interpreters. An appearing attorney must be prepared to advise the Court of all attorneys' availability for trial and future hearings as necessary.

**This Order serves as notice to the parties that failure to attend Calendar Call will result in an Order of Dismissal without prejudice, or entry of default, without further notice or hearing.** *See* **Fla. R. Civ. P. 1.200(j)(6).**

B. **Case Management Deadlines**

The following deadlines strictly apply unless otherwise modified by the Court:

| | **EVENTS** | **COMPLETION DEADLINE** |
|---|---|---|
| 1. | Service of Complaint | July 17, 2026; service under extension is only by court order. |
| 2. | Answer and/or initial motions/objections directed to the pleadings (i.e. to dismiss or strike) | 20 days after service |
| 3. | Initial Discovery Disclosures | 60 days after service |
| 4. | Amendment of pleadings/Adding parties | August 26, 2026 |
| 5. | Resolution of all motions/ objections directed to the pleadings and pleadings closed | September 15, 2026 |
| 6. | Disclosure of Expert Witness(es) | February 11, 2027 |
| 7. | Disclosure of Rebuttal Experts | March 3, 2027 |
| 8. | Inspections, Expert Witness Depositions and Compulsory Examinations completed | March 23, 2027 |
| 9. | File Witness & Exhibit Lists | April 12, 2027 |
| 10. | Completion of Discovery relating to Summary Judgment and *Daubert* Motions | March 23, 2027 |
| 11. | File and Serve Motion(s) for Summary Judgment and *Daubert* Motions | April 2, 2027 |
| 12. | File Rebuttal Witness Lists | April 22, 2027 |
| 13. | Completion of All Discovery | May 2, 2027 |
| 14. | Pre-Trial Meet & Confer | May 12, 2027 |
| 15. | File all Pre-Trial Motions (i.e. Motions in Limine) | May 12, 2027 |
| 16. | Deadline for Mediation | June 1, 2027 |

Case No. 50-2026-CA-003150-XXXA-MB

| 17. | Deposition Designations | June 1, 2027 |
|---|---|---|
| 18. | File Joint Pre-Trial Stipulation | June 1, 2027 |
| 19. | Deadline to hear ALL Motions | June 6, 2027 |
| 20. | Jury Instructions and Verdict Form | June 8, 2027 |
| 21. | Calendar Call/Trial Ready Date | June 11, 2027 |
| 22. | Trial Period | Begins on the docket associated with the above Calendar Call date, as provided in Divisional Instructions or by court order. |

**Note: If the above deadlines fall on a weekend or holiday, please refer to Fla. R. Gen. Prac. & Jud. Admin. 2.514.**

The parties are expected to actively manage the case and to confer early and often to ensure compliance with the Florida Rules of Civil Procedure and this order in timely resolving this case. **The parties are encouraged to file, meet, and make disclosures prior to the deadlines imposed above, in order to ensure compliance with the Rules requiring timely disposition of cases**.

The Court may, at any time, modify this Order by entry of: 1) an Amended Trial Order, 2) an Amended Case Management Order; or 3) any other Order intended to establish a modified case resolution schedule, any of which shall supersede the deadlines set forth in this Order. The Court reserves the authority to expedite the trial setting and amend pretrial deadlines accordingly. The Court further retains its discretion to modify any provision herein.

C. **Motions**

Unless court approval is required to set a particular motion for hearing, the parties must expeditiously set all contested motions for hearing. All non-dispositive motions, including motions directed to the pleadings, must be scheduled for hearing within **five (5) days** of filing. Parties shall schedule the hearing for the first vacancy on the Court's docket when all parties are available. **Failure to schedule a hearing within five (5) days may result in the Court deeming the motion(s) abandoned without further notice or hearing**.

The moving party shall be the party responsible for securing the presence of a court reporter. The moving party shall advise all parties in writing in advance of the hearing or trial of the arrangements made, if any, for the presence of a court reporter, or shall advise all parties in advance of the hearing or trial that the moving party has chosen not to obtain a court reporter.

Before filing a non-dispositive motion, the movant must follow Rule 1.202 and Local Rule 4. Failure to comply with the requirements of Rule 1.202 and Local Rule 4 may result in sanctions against the non-compliant party.

The requirements of Rule 1.202 do not apply when the movant or the nonmovant is unrepresented by counsel (*pro se*).

D. **Extensions, Modifications and Continuances**

**Extensions of Deadlines Other than Trial/Calendar Call: All motions to extend deadlines must be filed prior to the deadline.** Untimely motions will be denied absent compelling circumstances and a showing of good cause.

The parties must strictly follow Rule 1.200(e) and Administrative Order 3.110 (as amended) when filing motions for extension or modification. If the parties agree, and the extension will not prevent the case from being trial ready by the original Calendar Call date, the parties may file a motion and submit for the Court's consideration an agreed order or proposed Amended DCMO, as applicable under Rule 1.200(e)(1). The motion shall identify which deadlines are requested to be extended and the basis for the request. Each agreed order or Amended DCMO must contain agreed-upon dates for all remaining deadlines and confirm that the Calendar Call date remains as previously set. The Court will accept the amendment or direct the parties to set a DCM Conference. **Agreements to extend the dates for the filing of Summary Judgment and *Daubert* motions, and for completion of discovery, must be set for hearing, and the parties must be prepared to address how the proposed extension will not affect the Calendar Call date.**

**Motions to Continue Trial:** Motions to continue trial must strictly comply with Rule 1.460. **Motions to continue are disfavored and will rarely be granted and then only upon good cause shown. Successive continuances are highly disfavored. Lack of due diligence in preparing for trial is not grounds to continue the case**. Failure to timely complete discovery and/or file a motion for summary judgment shall not be grounds to continue the trial.

E. **DCM Conferences**

If any party is unable to meet the deadlines set forth in this Order for any reason, including unavailability of hearing time, the affected party must promptly set a DCM conference as described in Administrative Order 3.110 (as amended), identifying the hearing time requested and the pending motion(s). DCM conferences shall be scheduled through online scheduling (OLS) on either the Court's: 1) DCM - Case Management Conference docket; or 2) Uniform Motion Calendar, in accordance with Divisional Instructions.

II. **UNIFORM PRE-TRIAL PROCEDURE**

A. TIMELY SERVICE AND DEFAULTS

Parties must make reasonable efforts to ensure speedy service. Each return of service must be separately filed for each defendant. If service is not completed within ninety (90) days, an Order will be issued directing service by the **ONE-HUNDRED**

**TWENTY (120) DAY DEADLINE**. Failure to comply will result in dismissal of the case or party for lack of service. Any motions to extend the deadline for service must specify why service could not have been effectuated, what has and is being done to effectuate service and request only that amount of additional time necessary.

If all defendants become defaulted, a Motion for Default Final Judgment along with supporting documentation must be filed within **thirty (30) days** of the last default and set for hearing at the next available hearing time.

B.  <u>INITIAL DISCLOSURES</u>

Within **sixty (60) days after service** on a defendant, and except as exempted by Rule 1.280(a)(2) or as ordered by the court, each party must, without awaiting a discovery request, provide to the other parties initial discovery disclosures in compliance with Rule 1.280(a), unless privileged or protected from disclosure.

C.  <u>EXHIBITS AND WITNESSES</u>

No later than **sixty (60) days before Calendar Call**, each party shall file and exchange lists of all trial exhibits, names, and addresses of all trial witnesses. Each party's witness list must include a brief description of the substance and scope of the testimony to be elicited from each witness. Both sides must cooperate in the scheduling of all witness depositions.

Each party's exhibit list shall include each exhibit separately numbered and identified. Generic or prospective designations are not allowed (e.g. insurer's file, documents to be produced, etc.). Each party shall provide for a reasonable time and place for the other parties to review and copy the exhibits.

D.  <u>EXPERT WITNESS DISCLOSURES</u>

In addition to the names and addresses of each expert retained to formulate an expert opinion, as well as any hybrid fact/expert witnesses, no later than **one-hundred and twenty (120) days before Calendar Call**, the parties must provide:

1.  The subject matter about which the expert will testify;
2.  The opinions to which the expert will testify;
3.  A summary of the grounds and facts for each opinion; and
4.  A copy of the expert's curriculum vitae.

**Each expert will be limited to testifying only about those matters which have been fully disclosed.**

Parties shall furnish opposing counsel with two (2) alternative dates of availability of all expert witnesses for the purpose of taking their deposition. All parties shall cooperate in the scheduling of expert depositions.

Case No. 50-2026-CA-003150-XXXA-MB

The parties shall also provide answers to standard form expert interrogatories. All reports or other data compiled by each disclosed expert which are intended to be used by the expert and/or referred to during his/her deposition testimony shall be provided electronically to all opposing parties at least 72 hours prior to the date of the scheduled deposition.

**Rebuttal/Responsive Experts**

No later than **one-hundred (100) days before Calendar Call**, the parties shall provide opposing counsel with a written list with the names and addresses of all rebuttal/responsive expert witnesses intended to be called at trial and only those rebuttal/responsive expert witnesses listed shall be permitted to testify. The parties shall also furnish opposing counsel with expert reports or summaries of all rebuttal/responsive expert witnesses' anticipated testimony to the same extent as the expert disclosure requirement above.

Within **twenty (20) days** following this disclosure, the parties shall make their rebuttal/responsive experts available for deposition. The experts' depositions may be conducted without further court order.

E.  REBUTTAL FACT WITNESSES AND EXHIBITS

No later than **fifty (50) days before Calendar Call**, the parties must file and exchange lists of names and addresses of all rebuttal fact witnesses and lists of any rebuttal exhibits.

F.  ADDITIONAL EXHIBITS, WITNESSES OR OBJECTIONS

At trial, the parties will be strictly limited to exhibits and witnesses previously disclosed absent agreement of the parties or order of the Court upon good cause shown. A party desiring to use an exhibit or witness discovered after counsel have conferred must immediately furnish the Court and other counsel with a description of the exhibit or with the witness' name and address and the expected subject matter of the witness' testimony, together with the reason for the late discovery of the exhibit or witness. Failure to reserve objections constitutes a waiver. Use of the exhibit or witness may be allowed by the Court for good cause shown.

G.  DEPOSITION DESIGNATIONS

No later than **ten (10) days prior to Calendar Call**, each party must serve deposition designations, or portions of depositions, each intends to offer as testimony. No later than **eight (8) days prior to Calendar Call**, each opposing party is to serve any counter (or "fairness") designations, together with objections to the depositions, or portions thereof, originally designated. No later than **five (5) days before Calendar Call**, each party must serve any objections to counter-designations served by an opposing party.

H.  <u>DISCOVERY COMPLETION</u>

All discovery relating to Summary Judgment and *Daubert* motions must be completed no later than **eighty (80) days prior to Calendar Call**.

All discovery must be completed no later than **forty (40) days prior to Calendar Call**.

Rulings as to admission on late discovery will be made on a case by case basis. Absent unforeseeable, exigent circumstances, the failure to complete discovery is not grounds for a continuance.

I.  <u>COUNSEL MEETING AND PRE-TRIAL STIPULATION</u>

Counsel or the parties, if not represented by counsel, shall meet in person at a mutually convenient time and place no later than **thirty (30) days before Calendar Call** to discuss settlement, simplify the issues, and stipulate to as many facts and issues as possible, and prepare a Pre-Trial Stipulation in accordance with this paragraph.

It shall be the duty of Plaintiff's counsel to see that the Pre-Trial Stipulation is drawn, executed by counsel for all parties, and filed with the Clerk no later than **ten (10) days prior to Calendar Call. UNILATERAL PRE-TRIAL STIPULATIONS ARE DISALLOWED, UNLESS APPROVED BY THE COURT AFTER NOTICE AND HEARING.** If a party does not receive a substantive response to a proposed Pre-Trial Stipulation after good faith effort, such party shall file a unilateral Pre-Trial Stipulation with a certification of all efforts that were made to confer with the opposing party. Counsel for all parties are charged with good faith cooperation in preparing the Pre-Trial Stipulation, and the parties shall make exhibits available for inspection and copying. Failure to cooperate in preparing the Pre-Trial Stipulation may result in striking pleadings, witnesses, or exhibits.

The Pre-Trial Stipulation must contain the following in separately numbered paragraphs:

1. Names and contact information of attorneys to try case.
2. A list of all pending motions requiring action by the Court. **Motions not listed are deemed abandoned or waived**.
3. A statement of estimated trial time, including the total number of trial days anticipated, and the time needed per side for (1) jury selection, (2) opening arguments, (3) each case in chief, and (4) closing arguments.
4. **Statement of the Facts:** A concise statement of the facts in an impartial, easily understandable manner which may be read to the jury.
5. **Statement Facts and Agreed Rules of Law:** A list of any stipulated facts requiring no proof at trial and any agreed rules of law.

Case No. 50-2026-CA-003150-XXXA-MB

6. **Statements of Disputed Law & Fact:** A statement of disputed issues of law and fact that are to be tried.

7. **Witness Lists:** Parties must attach their previously filed Witness Lists, including rebuttal or impeachment witnesses. If any party objects to any witness, such objections must be stated in the Stipulation, setting forth the grounds with specificity. At trial, all parties will be strictly limited to witnesses properly and timely disclosed. Only those witnesses listed by NAME will be permitted to testify at trial.

8. **Exhibit Lists:** Parties must attach their previously filed Exhibit Lists. All exhibits to be offered in evidence at trial must have been made available to opposing counsel for examination. Only those exhibits listed may be offered in evidence. If any party objects to the introduction of any such exhibit, such objection must be stated in the Pre-Trial Stipulation, setting forth the grounds with specificity. Demonstrative exhibits (e.g. PowerPoints, charts, enlargements of exhibits) to be used at a Jury Trial must be displayed to all counsel before being shown to the jury. All exhibits must be pre-marked and numbered consistent with Clerk guidelines.

9. **Jury Instructions:** Counsel must identify all agreed-upon standard jury instructions and all special instructions. Any objections or disputed jury instructions must be attached and identified as to the party that proposed the instruction [indicated in redline/track changes]. Copies of all agreed-upon instructions or disputed instructions must be attached to the Stipulation as one document, redlined as necessary, along with copies of supporting statutory citations and/or case law.

10. **Verdict Forms:** The jury verdict form must be attached and designated as agreed to or disputed.

11. **Peremptory Challenges:** State the number of peremptory challenges for each party.

12. Other agreements or issues for trial, if any.

Failure to file a Joint Pre-Trial Stipulation as provided above may result in Court-imposed sanctions, including dismissal or default without further notice of the Court.

J. MOTIONS

**Summary Judgment and *Daubert* Motions** must be filed at least **seventy (70) days before Calendar Call**. The parties shall confer regarding summary judgment motions to ensure discovery necessary for those motions is completed in advance of their filing.

**ALL MOTIONS** (including dispositive motions and motions in limine), deposition objections, and expert challenges must be filed, served and heard at least **five (5) days before Calendar Call**.

K. PRE-MARKING EXHIBITS

Prior to trial, each party is to mark for identification all exhibits in accordance with

Page **8** of **11**

Case No. 50-2026-CA-003150-XXXA-MB

the guidelines of the Clerk of Court. Instructions and templates may be found at: www.mypalmbeachclerk.com/departments/courts/evidence-guidelines/civil-evidence).

### L. ENLARGED JURY PANELS

Local Rules require advance approval of the Chief Judge and Jury Office for jury panels exceeding 31 jurors. **To ensure enough jurors are available, requests for enlarged jury panels must be resolved at least six (6) months before Calendar Call**. Failure to timely request an enlarged panel may result in Court-ordered sanctions, including a limitation on peremptory challenges.

### M. INTERPRETERS

Unless otherwise ordered by the Court, it shall be the responsibility of the party who needs the services of an interpreter, whether for a litigant or for a witness, to have a competent interpreter present in court.

### N. JURY INSTRUCTIONS AND VERDICT FORM

A joint set of proposed jury instructions and a proposed verdict form must be provided to the court no less than **three (3) days before Calendar Call** in a printed form appropriate for submission to the jury and in Microsoft Word format.

If there is an objection to a proposed instruction, the instruction should be followed by the specific objection, a brief explanation, and a citation to legal authority. If an alternative or modified instruction is proposed, it should follow the instruction it is intended to replace.

### O. UNIQUE QUESTIONS OF LAW

Prior to calendar call, counsel for the parties are directed to exchange and simultaneously submit to the Court appropriate memoranda with citations to legal authority in support of any unique legal questions that may reasonably be anticipated to arise during the trial.

## III. **MEDIATION**

### A. MEDIATION REQUIRED

1. All parties are required to participate in mediation.
2. The attendance of counsel who will try the case and representatives of each party with full authority to enter into a complete compromise and settlement is mandatory. If insurance is involved, an adjuster with authority up to the policy limits must attend.
3. At least one week prior to a scheduled mediation conference, all parties are to file with the mediator a brief, written summary of the case containing a list of

Case No. 50-2026-CA-003150-XXXA-MB

issues as to each party.

4. All communications at the mediation conference are privileged consistent with Florida Statutes sections 44.102 and 90.408.

5. The mediator has no power to compel or enforce a settlement agreement. If a settlement is reached, it is a responsibility of the attorneys or parties to reduce the agreement to writing and to comply with Florida Rule of Civil Procedure 1.730(b), unless waived.

B. <u>MEDIATION SCHEDULING</u>

**The Plaintiff's attorney is responsible for scheduling mediation**. The parties should agree on a mediator. If they are unable to agree, any party may apply to the Court for appointment of a mediator in conformity with Rule 1.720 (j), Fla. R. Civ. P. The lead attorney or party must file and serve on all parties and the mediator a Notice of Mediation giving the time, place, and date of the mediation and the mediator's name.

C. <u>COMPLETION OF MEDIATION BEFORE CALENDAR CALL</u>

Completion of mediation prior to calendar call is a prerequisite to trial and must be completed no later than **ten (10) days prior to Calendar Call**. If mediation is not conducted, or if a party fails to participate in mediation, the Court may impose sanctions, including monetary sanctions, striking pleadings and witnesses, and dismissal or default without further notice of the Court.

D. <u>OPPOSITION TO MEDIATION</u>

Any party opposing mediation may proceed under Florida Rule of Civil Procedure 1.700(b).

IV. **<u>NON-COMPLIANCE</u>**

**NON-COMPLIANCE WITH ANY PORTION OF THIS ORDER MAY RESULT IN THE STRIKING OF THE PLEADINGS, WITNESSES, OR EXHIBITS, ENTRY OF DEFAULT OR DISMISSAL WITHOUT FURTHER NOTICE OF THE COURT, OR IMPOSITION OF SUCH OTHER SANCTIONS AS IS JUST AND PROPER.**

**DONE AND ORDERED** in West Palm Beach, Palm Beach County, Florida.

50-2026-CA-003150-XXXA-MB   03/20/2026
Reid P. Scott   Judge

50-2026-CA-003150-XXXA-MB   03/20/2026
Reid P. Scott
Judge

Case No. 50-2026-CA-003150-XXXA-MB

A copy of this Order has been furnished to the Plaintiff. The Plaintiff shall serve this Order to the Defendant(s) in compliance with Administrative Order 3.110 (amended).

# ADA NOTICE

This notice is provided pursuant to Administrative Order No. 2.207-7/22

**"If you are a <u>person with a disability</u> who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings, Jr., Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**

**"Si usted es una <u>persona minusválida</u> que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings, Jr., 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355-4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711."**

**"Si ou se yon <u>moun ki enfim</u> ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings, Jr., kòòdonatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telefòn li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711."**

Filing # 244193466 E-Filed 03/19/2026 03:23:37 PM

## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

KIM HENEGHAN, MARK TALUCCI AND
STEVE FELDMAN, AS TRUSTEES OF
THE LBM FAMILY TRUST DATED
FEBRUARY 9, 2021, FRESH POND
INVESTMENT LLC, WINSTON REAL
ESTATE HOLDINGS LLC, BAILEY
INVESTMENTS LLC, LBM DME
HOLDINGS LLC, LOUSE INVESTMENT
LLC, LOUSE PROPERTY HOLDINGS LLC,
AND LOUSE HOLDINGS LLC,

       Plaintiff,

vs.

SKATTEFORVALTNINGEN,

       Defendant.

_____/

**Case No.  50-2026-CA-003150**

**Division:**

### SUMMONS

**THE STATE OF FLORIDA**:
To Each Sheriff of the State:

       **YOU ARE HEREBY COMMANDED** to serve this Summons and a copy of the Complaint, in this action on Defendant:

       **SKATTEFORVALTNINGEN**
       c/o Danish Central Authority for Service
       Retten på Frederiksberg
       Howitzvej 32
       2000 Frederiksberg
       Denmark

       The Defendant is hereby required to serve written defenses to the Complaint on the Plaintiffs' attorney, whose name and address is:

       Roland Potts, Esq.
       Andrea Cunha, Esq.
       Quentin Welborn, Esq.
       FOLEY & LARDNER LLP
       2 S. Biscayne Blvd., Suite 1900
       Miami, FL 33131

NOT A CERTIFIED COPY

within **TWENTY (20)** days after service of this Summons on the Defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on the Plaintiff's attorney or immediately thereafter.  If the Defendant fails to do so, a default will be entered against the Defendant for the relief demanded in the Complaint.

DATED on __**Mar 23 2026**__, 2026.



**(COURT SEAL)**

Clerk of the Circuit Court

By _____

As Deputy Clerk

*If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact William Hutchings Jr., MPA, PHR, the Americans with Disabilities Act Coordinator, Palm Beach County Courthouse, 205 North Dixie Highway West Palm Beach, Florida 33401; telephone number (561) 355-4380 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

*Si usted es una persona minusválida que necesita algún acomodamiento para poder participar en este procedimiento, usted tiene derecho, sin tener gastos propios, a que se le provea cierta ayuda. Tenga la amabilidad de ponerse en contacto con William Hutchings Jr., MPA, PHR, 205 N. Dixie Highway, West Palm Beach, Florida 33401; teléfono número (561) 355- 4380, por lo menos 7 días antes de la cita fijada para su comparecencia en los tribunales, o inmediatamente después de recibir esta notificación si el tiempo antes de la comparecencia que se ha programado es menos de 7 días; si usted tiene discapacitación del oído o de la voz, llame al 711.*

*Si ou se yon moun ki enfim ki bezwen akomodasyon pou w ka patisipe nan pwosedi sa, ou kalifye san ou pa gen okenn lajan pou w peye, gen pwovizyon pou jwen kèk èd. Tanpri kontakte William Hutchings Jr., MPA, PHR, k donatè pwogram Lwa pou ameriken ki Enfim yo nan Tribinal Konte Palm Beach la ki nan 205 North Dixie Highway, West Palm Beach, Florida 33401; telef n li se (561) 355-4380 nan 7 jou anvan dat ou gen randevou pou parèt nan tribinal la, oubyen imedyatman apre ou fin resevwa konvokasyon an si lè ou gen pou w parèt nan tribinal la mwens ke 7 jou; si ou gen pwoblèm pou w tande oubyen pale, rele 711.*

2

**IMPORTANTE**

Usted ha sido demandado legalmente.  Tiena veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda ajunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado immediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo, o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).

**IMPORTANT**

Des poursuites judiciaries ont ete entreprises contre vous.  Vous avez 20 jours  consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal.  Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le Tribunal entende votre cause.  Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du Tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

3

**IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
IN AND FOR PALM BEACH COUNTY, FLORIDA**

KIM HENEGHAN, MARK TALUCCI AND STEVE FELDMAN, AS TRUSTEES OF THE LBM FAMILY TRUST DATED FEBRUARY 9, 2021, FRESH POND INVESTMENT LLC, WINSTON REAL ESTATE HOLDINGS LLC, BAILEY INVESTMENTS LLC, LBM DME HOLDINGS LLC, LOUSE INVESTMENT LLC, LOUSE PROPERTY HOLDINGS LLC, AND LOUSE HOLDINGS LLC,

       Plaintiff,

vs.

SKATTEFORVALTNINGEN,

       Defendant.

Case No. 2026-CA-003150

_____/

<u>**NOTICE OF FILING ACCEPTANCE OF SERVICE OF PROCESS**</u>

The Plaintiffs, KIM HENEGHAN, MARK TALUCCI AND STEVE FELDMAN, as Trustees of the LBM Family Trust Dated February 9, 2021, FRESH POND INVESTMENT LLC, WINSTON REAL ESTATE HOLDINGS LLC, BAILEY INVESTMENTS LLC, LBM DME HOLDINGS LLC, LOUSE INVESTMENT LLC, LOUSE PROPERTY HOLDINGS LLC, and LOUSE HOLDINGS LLC, by and through their undersigned counsel, hereby files with the Court the attached Acceptance of Service of Process for the service of a copy of the Complaint. The Acceptance of Service of Process is being filed with the Court for use at trial, as evidence, or for any other uses pursuant to the Florida Rules of Civil Procedure.

[*Signature to Follow*]

NOT A CERTIFIED COPY

Dated: April 1, 2026

/s/ *Quentin R. Welborn*
Roland Potts
Florida Bar No.: 87081
rpotts@foley.com
ycenteno@foley.com
Andrea Cunha
Florida Bar No.: 42015
Andrea.cunha@foley.com
anita.gomez@foley.com
Quentin R. Welborn
Florida Bar No.: 1032613
quentin.welborn@foley.com
natali.garcia@foley.com
eupshur@foley.com
**Foley & Lardner LLP**
2 S. Biscayne Blvd., Suite 1900
Miami, FL 33131
Phone:  305.482.8400
Fax:  305.482.8600

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 1, 2026, a true and correct copy of the foregoing Notice was filed through the Florida E-Portal filing system which will send notice to all registered recipients.

/s/ *Quentin R. Welborn*
Quentin R. Welborn
Florida Bar No. 0091110

2

4931-6872-5661.1

Filing # 245119851 E-Filed 04/01/2026 05:44:39 PM

## IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT
## IN AND FOR PALM BEACH COUNTY, FLORIDA

KIM HENEGHAN, MARK TALUCCI AND STEVE FELDMAN, AS TRUSTEES OF THE LBM FAMILY TRUST DATED FEBRUARY 9, 2021, FRESH POND INVESTMENT LLC, WINSTON REAL ESTATE HOLDINGS LLC, BAILEY INVESTMENTS LLC, LBM DME HOLDINGS LLC, LOUSE INVESTMENT LLC, LOUSE PROPERTY HOLDINGS LLC, AND LOUSE HOLDINGS LLC,

      Plaintiffs,

vs.

SKATTEFORVALTNINGEN,

      Defendant.

Case No. 2026-CA-003150

_____/

### ACCEPTANCE OF SERVICE OF PROCESS

Defendant, **Skatteforvaltningen ("SKAT")** hereby accepts service of a copy of the Complaint for Damages and Declaratory Judgment filed with the Clerk of the Court on March 19, 2026, in the above-captioned action (the "Action"). The undersigned certifies that she is authorized to accept service of process on behalf of **SKAT** and hereby waives any defense of insufficiency of process. This Acceptance of Service of Process is conditioned upon Plaintiffs' agreement that **SKAT** shall have either (i) fifty (50) days from the date of acceptance to answer or otherwise respond to the Complaint, or (ii) if **SKAT** files a notice of removal within thirty (30) days from the date of acceptance, thirty (30) days from the filing of the notice of removal to answer or otherwise respond to the Complaint.

**DATED** this 1 day of April, 2026.

Meaghan Gregg
Florida Bar No. 33607

Hughes Hubbard & Reed LLP
One Battery Park Plaza, 17th Fl
New York, NY 10004
Telephone: (212) 837-6000
*Counsel for Defendant Skatteforvaltningen*

NOT A CERTIFIED COPY

4900-1098-2811.1